THE STATE *v.* MEMPHIS & CHARLESTON RAILROAD COMPANY.

1. TAXES. *Assessment. Comptroller. Railroads.* Under the acts of 1879 and 1883, making it the duty of all collectors of taxes to assess omitted property, the Comptroller of the State is the proper officer to make the assessment of the property of railroad companies.

2. SAME. *Same. Collection. How enforced.* An assessed tax on property is a debt of the owner of the property during the period for which the assessment is made, and may be enforced like any other debt, although the statute authorizing the assessment prescribes a specific mode of proceeding.

3. SAME. *Same. Omitted property.* The property of a railroad company liable to taxation for years previous to the act of 1875, which first

created a State Board of Assessors for the assessment of such property, may be assessed under a subsequent act of the Legislature expressly providing for its assessment for the taxes of those years.

## FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

CHAMPION & HEAD, S. WATSON, J. W. BAKER and J. B. DANIEL for State.

POSTON & POSTON for Railroad.

COOPER, J., delivered the opinion of the court.

As this case comes before us, it is a bill filed by the State against the Memphis & Charleston Railroad Company to collect the State taxes on the McMinnville & Manchester railroad, and the Winchester & Alabama railroad, for the years 1872, 1873 and 1874. The bill alleges that these two railroads were sold in 1871, under a decree obtained by the State for the enforcement of a statutory lien, and were bought by the Memphis & Charleston Railroad Company. That company afterwards sold the roads to the Nashville, Chattanooga & St. Louis Railway Company, and conveyed them to that company by a deed with covenants of general warranty. The bill seeks to charge the Memphis & Charleston Railroad Company with the State taxes for the years mentioned as the owner of these roads during those years. The bill also claims the benefit of the warranty contained in the deed to the Nashville, Chattanooga & St. Louis Rail-

way by subrogation. The Memphis & Charleston Railroad Company demurred to the bill, and by an agreement, embodied in the final decree below, agreed to stand by the demurrer, and that the decisions of the chancellor and of this court on the demurrer should be final and conclusive upon it, unless the bill were amended. The chancellor overruled the demurrer, and gave judgment, under the agreement, in favor of the State against the company for the taxes claimed. The company appealed.

Taking up the causes of demurrer relied on in argument in the order in which the defendant's counsel has presented them, we find the first point relied on is that the Comptroller of the State, by whom the assessments in controversy were made, had no authority to make them. By the act of 1879, chapter 79, "all collectors of taxes" were made assessors to assess all property which had not been assessed, but on which taxes ought to be paid by law, and proceed to collect the taxes. The act made special provision for a re-valuation of the property before the judge or chairman of the county court upon proof, if the owner of the property disputed the assessment of the collector. It also provides, if the owner raises no question on the assessment, but claims that the property is exempt from taxation, for the immediate institution of a suit by warrant before a justice of the peace for the recovery of the taxes. This court construed the act as giving the collector power to assess and collect taxes on omitted property only for the term of the office for which he was elected and qual-

ified: *Otis* v. *Boyd,* 8 Lea, 679. In view of this decision the Legislature, by the act of 1883, chapter 181, amended the first section of the act of 1879, so as to read as follows: "That all collectors of taxes are hereby made assessors to assess all property which by mistake of law or fact has not been assessed, whether the omission be for the particular year for which the collector is acting, or for any previous year or years, and it is hereby made the duty of such collectors, in all cases where property has not been assessed, but on which taxes ought to be paid by law, to immediately assess the same, and proceed to collect the taxes; and such collectors are hereby authorized to assess and collect taxes upon property for all the years for which taxes ought to have been paid upon such property, but have not been paid in consequence of the errors or omissions of former collectors or assessors; and if the owner of the property admits the liability of the property to taxation but disputes the assessment, he may have a re-valuation before the judge or chairman of the county court at any time within one month, and in such case the judge or chairman aforesaid may hear proof and fix the assessment or valuation, and the same shall be final."

The cause of demurrer under consideration is that the Comptroller is not a collector within the meaning of the statute. The language of the acts of 1879 and 1883 is that "all collectors of taxes" are made assessors. The meaning plainly is that any person authorized by law to collect particular taxes on property may assess the omitted property "for all the

years taxes ought to have been paid on such property." By the act of 1875, chapter 78, section 8, (new Code, section 704), the Comptroller of the State is made the collector of the State taxes due from railroad companies, and he is expressly authorized, in the event the taxes are not paid to him "within the time allowed other tax-payers," to issue a distress warrant against the company, to be executed by any sheriff. The act adds: "In the collection of said tax, the Comptroller is hereby empowered to do all acts and things which any collector of revenue is authorized to do by law," etc. And the Code, section 56, says: "The word 'collector' includes any person intrusted with the collection of public revenue." It is very clear, therefore, that the Comptroller was, in 1883, the collector, and the only collector of the taxes due by the railroad companies to the State, and, consequently, the collector whose duty it was to assess omitted property.

It is earnestly argued that as, by the second section of the act of 1879, the collector is required, before commencing suit for the State taxes on omitted property, to submit the facts to the Comptroller, and obtain his direction to sue, the Comptroller could not have been intended to be a collector within the statute. The draftsman of the act no doubt had in his mind the cases in which the taxes due the State are collected by the county trustee or other local officer, and provided that such collectors should obtain the sanction of the Comptroller to the proposed suit. But these are directory details, while the whole scope

of the act contemplates the assessment of omitted property by the collector of the taxes on that specific property. And no reason occurs why the Comptroller, who is also the collector, may not give his assent to a suit brought by himself for the collection of taxes, as well as to a suit by another collector. In acting upon the propriety of the suit, he is the mere agent of the State, answerable only to his principal for his conduct, and not to the tax payer. And it is only the State tax which is involved in this controversy.

Several of the causes of demurrer raise the point, which is next presented, that the only relief sought against the Memphis & Charleston Railroad Company being a money decree, that relief cannot be had upon the allegations of the bill. "The argument in support of the point assumes that the property is not assessed to the Memphis & Charleston Railroad Company, and therefore the company cannot be sued in debt or assumpsit. And it is then argued that the Nashville, Chattanooga & St. Louis Railway has no right of action upon the warranty of the Memphis company to which the State can be subrogated, nor has the State any right of subrogation. But the bill expressly proceeds against the Memphis & Charleston Railroad Company as owner of the property during the years of assessment, making the assessment itself an exhibit to and a part of the bill. That assessment says in so many words that it is of property "owned by the Memphis & Charleston Railroad Company during the years 1872–3–4, for which (years)

the same is assessed." The assumption of the argu-ment is therefore erroneous, and our authorities are uniform that an assessed tax on property is a debt of the owner of that property, and may be enforced accordingly.

The next cause of demurrer relied on is that the chancery court had no jurisdiction of the cause. The argument in support of this ground of demurrer is that the act of 1879 provides that the collector may collect the tax by warrant before a justice of the peace, and that no other mode can be resorted to. The general rule is that where a statute creates a right, and points out a mode of enforcing that right, the mode pointed out is ordinarily exclusive: *Col-cough* v. *Railroad Company*, 2 Head, 171. But the acts under consideration do not create a new right. They merely provide for the enforcement of an exist-ing right, that all property shall bear its equal burden of taxation, by directing the assessment of omitted property. When the assessment has been lawfully made, the tax stands like any other tax as a debt against the owner of the property, to be enforced either in the mode designated by the statute, or any other legal mode. All that the tax-payer can ask, if he disputes the liability of the property to taxa-tion, is a fair trial in any court having jurisdiction. An action of debt may now be brought in the chan-cery court.

The only other cause of demurrer relied on is that the assessment sued on is void, because for the years 1872, 1873, 1874, there was no law in force author-

izing any assessment whatever of railroad property for taxation, and the Legislature having prescribed no mode of assessing the same, it cannot now be assessed. But neither of these positions is true in point of fact. The property of the railroad companies, like the property of any other corporation or citizen, was open to assessment under the general revenue laws of the State, and the acts of 1879 and 1883, do contain a mode of assessing the property prescribed by the Legislature, which applies to all omitted property. In the case of the *Louisville & Nashville Railroad Company* v. *The State*, 8 Heis., 663, the action of the local authorities of Sumner county, in assessing the property of the railroad company in that county for taxation, was affirmed by an equally divided court. The learned counsel of the defendant in this case argues that one of the judges of this court, who concurred in the affirmance of the judgment below in that case, had overruled that decision upon the main point. But this is a mistake. For in the case of the *City of Chattanooga* v. *Nashville, Chattanooga & St. Louis Railway*, 7 Lea, 561, which is the case referred to as overruling the previous decision, the action of the local authorities of Chattanooga in taxing the railroad property under the general revenue laws was sustained. What Judge Freeman, who delivered the opinion of the court, did dissent from in the previous case, was the reasoning and argument on the mode of assessment of railroad property adopted in the former opinion. The reasoning of the earlier opinion was in favor of a lumping estimate of the value of the whole road

in and out of the State, including rolling stock, equipments and buildings, and then taking the average value per mile. The later opinion maintained the position that under our constitution, the local property of a railroad company in a municipal corporation must be assessed like any other property of similar character.

"It has often been decided," says Judge Cooley, "that where the only defect in a tax was the want of previous legislation, this might be supplied retrospectively": Cooley on Tax., 228. And, of course, the Legislature may authorize, retroactively, any proceedings for the assessment of property for taxation which they might have authorized in advance. This is precisely what was done in the famous Nicholson pavement taxes at Memphis, which legislation was sustained by this court. *Lea* v. *Memphis,* 9 Baxt., 103. A re-assessment may always be provided for by the Legislature where the previous assessment is invalid, or, we may add, omitted: Cooley on Tax., 232. The acts of 1879 and 1883 do expressly provide for the mode of assessing omitted property, that is, property never previously assessed, no matter for what reason, giving the tax-payers ample opportunity to revise the assessment on proof. Besides, in this case there is no objection made to the valuation of the property, or the amount of the assessment. The mode of ascertaining the value of property for taxation is left to the Legislature: 7 Lea, 566; 12 Lea, 535.

There is no error in the decree of the chancellor, and it must be affirmed, with costs.